BUMGARDNER, Judge.
A Tazewell County jury convicted Mark Anthony Graham of statutory burglary, grand larceny of a firearm, shooting into an occupied building, and possession of a firearm after being convicted of a felony. He was acquitted of four other felonies: aggravated malicious wounding, attempted malicious wounding, use of a firearm in the commission of aggravated malicious wounding and use of a firearm in the commission of attempted malicious wounding. On appeal, the defendant argues the trial court erred (1) by refusing his instruction on heat of passion, (2) by refusing his instruction on the burden of proving affirmative defenses, (3) by denying his motion for a continuance, (4) by shackling him during trial, and (5) by holding the hearing on whether to shackle in his absence. Finding no error, we affirm.
The events all occurred in the Hash Hollow area of Tazewell County. Swanson and Linda Mullins lived in a house along *668 the public road at the mouth of the narrow, fairly steep hollow. Approximately 200 to 300 feet behind them, their daughter, Pam, and her husband, Doug Gates, lived in a trailer. One hundred seventy-five yards farther up the hollow, Steven and Tammy Hash lived in their trailer. The ground between the trailers was open, but woods and a creek ran along the right side of the hollow.
The defendant arrived unannounced at the Gateses’ trailer and stated that he wanted to stay there. Doug Gates was the defendant’s uncle, but Gates told him he could not stay because the police had been there several times looking for him. They told the defendant to leave, and when he would not, Doug Gates called Swanson Mullins at his home. He asked Mullins to call the sheriff or to send someone to help get rid of the defendant. The defendant retrieved a shotgun from a bedroom and pointed it at Gates’s face. Gates knocked the gun away, they scuffled, but the defendant left. Two or three minutes later, bullets started hitting the trailer..
Several people were at the Mullinses’ house when Gates called. One of them, Donald Keene, went to investigate. As he entered the Gateses’ trailer, “someone started shooting through the trailer,” breaking a window, and piercing the exterior. Everyone in the trailer took cover while Gates again called Mullins for help. Keene found a shotgun and shells, went outside, and took cover behind a cinder block wall located a few feet from the Gateses’ trailer. Keene heard the defendant hollering from the woods and saw him move from the woods toward the Hashes’ trailer.
After receiving Gates’s first call for help, Mullins got his pistol and went to the trailer to check on them. On his way, he heard the defendant call his name from the vicinity of the Hashes’ trailer. After checking at the trailer, Muhins returned to his house, got his rifle, and went into the woods heading towards the Hashes’ trailer. His son and a friend, who were also armed, went with him.
When the cah came to the Mullinses’ house, Lewis Collins grabbed a shotgun and made his way to a utility pole near the *669 Gateses’ trailer. While there, Collins was shot in the shoulder and stomach with double aught buckshot. He yelled to the defendant that he had been hit and to stop shooting before someone else got hurt. The defendant responded that he was not going to give up. Collins moved to better cover behind the cinder block wall where Keene was hiding.
During the episode, the defendant called Mullins’s name from the vicinity of the Hashes’ trailer and said, “I’ve come to die this time.” The defendant hollered that he could see Mullins “real good.” The shooting did not stop until sheriffs deputies arrived and took charge. They found that numerous bullets and buckshot penetrated the trailer on the side that faced the Hashes’ trailer. They also determined that numerous shots hit the cinder block wall but particularly around the vent window which Keene used as his vantage point. They found no gunshot damage to the Hash trailer.
The defendant testified about the incident. A few days before, he had argued with Mullins after telling him that Gates had abused him as a child. Mullins threatened to kill the defendant for “talking trash.” Because he was wanted for a probation violation, the defendant had been living in his car. He went to the Gateses’ trailer to take a shower and do laundry. While doing so, Gates touched the defendant’s behind, and they began ■ arguing. Gates telephoned Mullins telling him to send some armed men to the trailer. The defendant then grabbed a gun from the bedroom, pretended it was loaded, and pointed it in Gates’s face. They wrestled until the defendant told Gates to let him go. When Gates did, the defendant left the trailer. As he left, he did not see anyone coming from the Mullinses’ house.
The defendant walked up the hollow to get away without going past the Mullinses’ house. Halfway to the Hashes’ trailer, he saw four armed men, including Mullins and Collins, walking toward him. Two men seemed to be coming around each side of the Gateses’ trailer. He turned to continue running up the hollow. When he reached the Hashes’ trailer, he decided to get help there. As he went by the window to *670 the utility room he saw guns and burst through the window. He did not know whether anyone was home and did not see a car there. He broke through the window without ever going to the door or calling out to anyone for help. The defendant armed himself with a shotgun and a .22 caliber rifle, found the ammunition kept at the other end of the trailer, and went back outside.
The defendant saw three men down the hollow near the Gateses’ trailer, and he fired shots in the air to warn them that he was armed. He ran back into the trailer and fired more shots into the air. The defendant started aiming at the Gateses’ trailer after the others started shooting back. Eventually the defendant ran low on ammunition. He left the trailer and worked his way up the hollow and across the mountain. He went to North Carolina and turned himself in six days later to the Pulaski sheriffs office.
The trial court refused two defense instructions. The first[1] would have instructed the jury that they could not find that the defendant acted with malice if they found he acted in a heat of passion upon reasonable provocation. The trial court gave the first paragraph of the instruction which defined malice. The defendant was acquitted of the primary charges that contained the element, malice: aggravated malicious *671 wounding of Lewis Collins, attempted malicious wounding of Donald Keene, use of a firearm in the commission of aggravated malicious wounding, and use of a firearm in the commission of attempted malicious wounding. The issue is moot as to those offenses.
Only the conviction of shooting into an occupied dwelling required a finding of malice. When considering whether a trial court erred in refusing to give a proffered instruction, “we view the evidence with respect to the refused instruction in the light most favorable to the defendant.” Boone v. Commonwealth, 14 Va.App. 130, 131, 415 S.E.2d 250, 251 (1992). Viewed in that manner, the facts do not support a defense that the defendant acted in a heat of passion when he fired into the Gateses’ trailer.
After the defendant left the Gateses’ trailer, he was halfway to the Hashes’ trailer before he saw anyone. Instead of continuing his escape up the mountain, he broke through the trailer window when he saw weapons inside. Arming himself and finding ammunition, he went outside. The men he saw were near the Gateses’ trailer, a distance of about 175 yards; no one was coming up the hill, and no shots had been fired. The defendant fired warning shots but yelled that he “didn’t have a problem with them.” He went back into the trailer and resumed firing while dodging from window to window to avoid detection. He aimed shots at the Gateses’ trailer and the wall after shots were fired from that direction.
“ ‘Heat of passion’ refers to ‘the furor brevis which renders a man deaf to the voice of reason.’ An accused must show that he committed the crime with ‘passion’ and upon ‘reasonable provocation.’ ” Caudill v. Commonwealth, 27 Va.App. 81, 85, 497 S.E.2d 513, 514-15 (1998) (citations omitted). The law requires the simultaneous occurrence of both reasonable provocation and passion. See Canipe v. Commonwealth, 25 Va.App. 629, 643, 491 S.E.2d 747, 753 (1997).
Heat of passion excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection. By his own testimony, the defen *672 dant consciously abandoned his escape, armed himself, and started shooting. He did so before any other shots were fired or any words exchanged. Mullins’s threat was made two days earlier and not at the time of the incident. The defendant-did not act on sudden provocation or from- passion. He acted upon reflection and deliberation. We find the evidence insufficient as a matter of law to justify a heat of passion instruction.
The trial court refused a second defense instruction.[2] It would have instructed that affirmative defenses need only be proved sufficiently to raise a reasonable doubt. The defendant asserted two affirmative defenses, self-defense and duress. The defendant was acquitted of the crimes against which self-defense applied: aggravated malicious wounding of Lewis Collins, attempted malicious wounding of Donald Keene, use of a firearm in the commission of aggravated malicious wounding and use of a firearm in the commission of attempted malicious wounding. The issue is moot as to those offenses.
Self-defense excuses or justifies a homicide or assault committed while repelling violence arrayed against the defendant. It is a response to the threat of death or serious bodily harm. It is a defense to an act of violence that repels violence directed at the defendant. The right to use force to defend against death or serious bodily harm cannot excuse or justify a burglary or larceny.
“Homicide in defense of person or property, under certain circumstances of necessity; which is justifiable by the permission of the law. This takes place when a man, in defense of his person, habitation or property, kills another, who manifestly intends and endeavors, by violence or surprise, to commit a forcible or atrocious felony upon either. In the *673 cases to which this ground of justification applies, no felony has been committed, but only attempted; and the homicide is justifiable in order to prevent it.
“All felonies may not be so prevented. A distinction is made between such felonies as are attended with force, or any extraordinary degree of atrocity, which in their nature betoken such urgent necessity as will not allow of any delay, and others of a different kind and unaccompanied by violence on the part of the felon. Those only which come within the former description may be prevented by homicide; as murder, rape, robbery, arson, burglary and the like. In the attempt to commit either of these, the party whose person or property is attacked is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing, it is called justifiable self-defense.”
Dodson v. Commonwealth, 159 Va. 976, 980-81, 167 S.E. 260, 261 (1933) (citation omitted).
The efforts of the defendant to obtain weapons with which to defend himself are relevant to explain why he broke in the Hashes’ trailer and took the guns. Those facts tend to negate the existence of the intent necessary to establish burglary or larceny. They showed the defendant broke into the trailer to defend himself, not to commit a felony. They showed he took the guns as a means of protecting himself, not to steal them. In the sense that those facts refute the Commonwealth’s evidence of guilt, the jury was adequately instructed in applying the facts to the law.
The first instruction that the trial court gave provided, “There is no burden on the defendant to produce any evidence.” [3] See Russell v. Commonwealth, 216 Va. 833, 837, 223 *674 S.E.2d 877, 879 (1976) (approving instruction). This Court has discouraged attempts to further define reasonable doubt and the burden of proof. See Blaylock v. Commonwealth, 26 Va.App. 579, 598-99, 496 S.E.2d 97, 106-07 (1998) (where court gave alibi instruction, no error to deny instruction explaining burden to prove defense); Diffendal v. Commonwealth, 8 Va.App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (proper to refuse instructions which are misleading or redundant).
The affirmative defense of self-defense is similar to the alibi defense; it only requires the defendant to raise a reasonable doubt as to his guilt. See McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978); Lynn v. Commonwealth, 27 Va.App. 336, 352, 499 S.E.2d 1, 9 (1998), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999). As such, the defendant has no burden to prove the defense or negate an element of the crime. See Charles E. Friend, The Law of Evidence in Virginia § 9-11, 342 (4th ed.1993). The instructions given defined the elements of proof and the burden of proof. We find no error in the trial court’s refusing to give the additional instruction on the burden of proving affirmative defenses. Where a refused instruction is covered in another instruction there is no error. See Williams v. Commonwealth, 228 Va. 347, 349, 323 S.E.2d 73, 74 (1984).
The defendant raised a second affirmative defense, duress. Duress excuses criminal behavior “where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury.” Pancoast v. Commonwealth, 2 Va.App. 28, 33, 340 S.E.2d 833, 836 (1986) (citing United States v. Bailey, 444 U.S. 394, 409, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980)). Where the defendant fails “to take advantage of a reasonable opportunity to *675 escape, or of a reasonable opportunity to avoid doing the acts without being harmed, he may not rely on duress as a defense.” Id. (citations omitted). The defendant must show that the threat, which is “specifically directed toward causing [him] to commit the crime charged,” was coupled with evidence that he “reasonably believed that participation in the crime was the only way to avoid the threatened harm.” Roger D. Groot, Criminal Offenses and Defenses 181 (4th ed.1999) (citing Sam v. Commonwealth, 13 Va.App. 312, 324, 411 S.E.2d 832, 838 (1991)).
Again viewing the evidence in the light most favorable to the defendant, we find the evidence insufficient to establish duress. The defendant refused to leave the Gateses’ trailer and knew that Gates telephoned Mullins for help. The defendant was halfway up the hollow when he saw four armed men coming around the Gateses’ trailer. The defendant was fleeing, and he was familiar with the area and knew his way around the woods. He consciously quit his escape, elected to remain, and armed himself by breaking in the Hashes’ trailer. The defendant did not take advantage of the alternative to his criminal conduct. Indeed, he abandoned it and took up the fray. Because the defendant is not entitled to rely on the defense of duress, he is not entitled to complain that the trial court failed to instruct on the burden of proving the defense.
The defendant contends the trial court erred in the conduct of the trial proceedings. First, he argues that the trial court erred in denying a continuance made the morning of trial. The defendant moved for the continuance because he did not get enough sleep to be adequately prepared. The trial court had ordered the defendant moved from Keen Mountain Correctional Center to the county jail as an accommodation for trial preparation. However, the day before trial, the sheriff returned the defendant to the correctional center. He arrived there at 3:00 p.m. but did not go to bed until around 11:00 p.m. He was awakened after 1:00 a.m. and returned to jail arriving at 5:30 a.m. The defendant did not rest after he arrived at the jail. He contended he was unprepared to assist *676 with his defense because of a lack of rest. The trial court denied the motion but delayed the trial an hour to allow defendant to confer with his attorney.
The defendant’s trial had been continued on five previous occasions. The trial court stated:
this defendant has jerked the Court around for a number of times indicating that he was going to go ahead and enter pleas of guilty to these charges, or certain charges, and would get right up until the scheduled time for entering those pleas and he would change his mind and have to be taken back to the penitentiary and so forth....
The trial court had entered eight transportation orders for the defendant and had allowed him to stay in the jail for periods of thirty days to facilitate his trial preparation. The correctional center was 35 to 40 miles from the jail. The trial court had granted the defendant previous continuances to permit additional preparation.
“The decision whether to grant a continuance is within the sound discretion of the trial court. Abuse of discretion and prejudice to the complaining party are essential to reversal.” Lowery v. Commonwealth, 9 Va.App. 304, 307, 387 S.E.2d 508, 509 (1990) (citations omitted). See also Cardwell v. Commonwealth, 248 Va. 501, 509, 450 S.E.2d 146, 151 (1994), cert. denied, 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995).
The evidence does not support the defendant’s allegation that the court abused its discretion. The evidence does not show, and the defendant does not allege, that he was prejudiced by the court’s denial of his motion. The record reflects that the defendant testified that morning at a suppression hearing, and his testimony was clear, coherent, and responsive. The record does not reflect that the defendant was not fully able to assist in his defense. Indeed, the defendant was acquitted of four felonies. We conclude the trial court did not abuse its discretion by refusing to continue the trial.
Next we consider whether the trial court erred in shackling the defendant during the trial. The trial court entered a preliminary order to shackle the defendant after the *677 sheriffs department advised that the defendant had threatened to attack the Commonwealth’s Attorney and some witnesses during the trial. At a pretrial hearing,, a deputy testified that he was advised to use two guards when transporting the defendant. The defendant’s psychiatrist at Keen Mountain Correctional Center had informed the sheriffs office that the defendant “was dangerous and that they had him in solitary confinement down there and ... to use extra security on him.” They also advised that the defendant “was capable of killing someone.” The Commonwealth noted that “the defendant had made threats to disrupt the facility or cause a problem when transported to Keen Mountain [and] that did happen.” On a previous occasion, transportation officers had needed to use a shock belt to subdue the defendant. Commendably, defense counsel, as an officer of the court, indicated that there were allegations the defendant possibly intended to disrupt the trial.
The conduct of a trial is left to the sound discretion of the trial court. See Gray v. Commonwealth, 233 Va. 313, 343-44, 356 S.E.2d 157, 174, cert. denied, 484 U.S. 873, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). An accused may be shackled during a jury trial “after a determination that such measures are necessary for security reasons.” Seegars v. Commonwealth, 18 Va.App. 641, 646, 445 S.E.2d 720, 723 (1994) (citing Gray, 233 Va. at 343-44, 356 S.E.2d at 174). In considering whether a defendant shall be restrained, the trial court may consider “the seriousness of the charge, the defendant’s temperament, age, and physical attributes, his criminal record and any ... threatened misconduct.” Frye v. Commonwealth, 231 Va. 370, 381-82, 345 S.E.2d 267, 276 (1986) (citation omitted). See Martin v. Commonwealth, 11 Va.App. 397, 406, 399 S.E.2d 623, 628 (1990) (record must support court’s decision). Moreover, when a jury is not aware of the defendant’s restraints, there is no constitutional violation. See Gray, 233 Va. at 343-44, 356 S.E.2d at 174.
The trial court ruled that the defendant would be shackled during trial but granted defense counsel’s request to drape *678 two sides of the defense table to prevent the jury from seeing the restraints. The defendant did not request an instruction on the use of restraints and none was given. No evidence indicates that the jury ever observed the restraints. Given the seriousness of the charges, the threatened misconduct, the prior misconduct during transport, and the lack of evidence that the jury saw the restraints, we conclude that the trial court did not err.
The defendant was absent during the hearing on whether to shackle him. The defendant argues that conducting the hearing in his absence was a violation of his constitutional rights under the Sixth and Fourteenth Amendments, as well as his rights under the Virginia Constitution, Article 1, Section 8, and Code § 19.2-259.[4]
A defendant has a constitutional right to be present at all stages of the trial from arraignment to sentence. See U.S. Const. amend. VI; Code § 19.2-259; Jones v. Commonwealth, 227 Va. 425, 428, 317 S.E.2d 482, 483 (1984); Williams v. Commonwealth, 188 Va. 583, 592-93, 50 S.E.2d 407, 411-12 (1948). While this right must be carefully safeguarded, it is not absolute. See Cruz v. Commonwealth, 24 Va.App. 454, 461, 482 S.E.2d 880, 883 (1997) (en banc) (defendant’s right to be present may be forfeited). When the hearing was conducted, the sheriff had served the indictment on the defendant, the trial court had appointed counsel, but it had not arraigned the defendant, nor had he entered a plea. The trial had not commenced, so the hearing could not have been a stage of the trial. See Burnley v. Commonwealth, 208 Va. 356, 362, 158 S.E.2d 108, 112 (1967). The defendant concedes he found no authority that a defendant’s rights are violated if he is not present at a pretrial proceeding. We conclude that the pretrial hearing was not a stage of the trial at which the defendant’s presence was required.
*679 We also conclude that the decision to shackle the defendant was not a ruling that so affected the defendant’s interests that his presence was mandated. It was an administrative proceeding to assess the security requirements at trial. It was held six months before the trial finally commenced. Nothing bearing on the merits of the case was discussed, considered, or decided. Compare Quintana v. Commonwealth, 224 Va. 127, 295 S.E.2d 643 (1982), cert. denied, 460 U.S. 1029, 103 S.Ct. 1280, 75 L.Ed.2d 501 (1983) (defendant’s presence not required at pretrial conference on his sanity), and Bilokur v. Commonwealth, 221 Va. 467, 270 S.E.2d 747 (1980) (defendant’s presence not required at pretrial interrogation of victim by both parties), with Hunter v. Commonwealth, 23 Va.App. 306, 477 S.E.2d 1 (1996) (defendant’s presence required for jury view of crime scene), and Brittingham v. Commonwealth, 10 Va.App. 530, 394 S.E.2d 336 (1990) (error to prevent court reporter from recording in camera examination by both parties of witness on whether defendant was offered immunity for cooperating). We conclude that neither the nature nor purpose of the pretrial hearing mandated the defendant’s presence.
For the foregoing reasons, we affirm the defendant’s convictions.

Affirmed.

. Defense Instruction No. 17A provides:
Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.
Heat of passion excludes malice when the heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, or rage, anger, resentment, terror or fear so as to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.
If a person acts upon reflection or deliberation, or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.

. Defense Instruction No. 28A provides:
The defendant need not prove his affirmative defenses beyond a reasonable doubt, or even by a preponderance of the evidence. The defendant must only introduce sufficient evidence which, when considered with the whole evidence, creates a reasonable doubt regarding his guilt.

. The enture Instruction No. 1 reads as follows:
The defendant is presumed to be innocent. You should not assume the defendant is guilty because he has been charged and is on trial. This presumption of innocence remains with the defendant throughout trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves each and every element *674 of the offense beyond a reasonable doubt. This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence. However, suspicion or probability of guilt is not enough for a conviction.
There is no burden on the defendant to produce any evidence.
A reasonable doubt is a doubt based on your sound judgment after a full and impartial consideration of all the evidence in the case.

. Code § 19.2-259 provides, in part, that "[a] person tried for felony shall be personally present during the trial.”