COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, McClanahan and Petty
Argued at Salem, Virginia


RECHELL LYNN ROSE

                                                             OPINION BY
v.        Record No. 2762-07-3                      JUDGE ROBERT P. FRANK
                                                             MARCH 4, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge

        B. Leigh Drewry, Jr. (Cunningham & Drewry, on brief), for
        appellant.

        Benjamin H. Katz, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Rechell Lynn Rose, appellant, was convicted, in a bench trial, of use of a firearm while in

the commission of robbery, in violation of Code § 18.2-53.1.  On appeal, appellant challenges the

sufficiency of the evidence, contending that the victim's perception of the weapon as a firearm is

necessary to sustain the conviction.  For the reasons stated, we affirm the trial court.

BACKGROUND[1]

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)).

        L.S., the victim, owned a restaurant and had earlier employed her friend, appellant, to

help in the kitchen.  One evening, appellant discussed with a friend the idea of robbing L.S.  The

_____

        [1] The facts were stipulated to and communicated to the trial court by proffer.

following evening, appellant, her friend, and three other individuals went to L.S.'s house to rob

her. One of the men, "Al," was armed with a nine-millimeter pistol.

As L.S. was getting out of her car, one man wrestled L.S. to the ground and attempted to

take her deposit bag, which contained nine to ten thousand dollars in cash. When L.S. did not let

go, "Al" struck her in the head five times with the pistol, causing L.S. to release the bag.

L.S. recalled being struck in the head, but was unable to identify the object with which

she was beaten. She testified that she never saw a pistol during this encounter.

Upon a proffer of the evidence, the trial court convicted appellant of use of a firearm in

the commission of robbery. This appeal follows.

## ANALYSIS

### Use of Firearm as a Club

Appellant argues that the gun was used as a club and Code § 18.2-53.1 does not proscribe

the use of clubs in certain felonies.[2] She reasons that "Al" ceased to use the pistol in the manner

for which it was designed, namely, as an instrument designed to expel a projectile by force as

defined in Armstrong v. Commonwealth, 36 Va. App. 312, 549 S.E.2d 641 (2001 (*en banc*).

Using a gun in this "altered" state, she argues, precludes a conviction pursuant to Code § 18.2-53.1.

---

[2] Appellant's question presented asks "Is a victim's perception of a firearm necessary to sustain a conviction under Va. Code § 18.2-53.1?" We acknowledge that the question does not specifically address whether the statute prohibits the use of a firearm as a club. However, "all parties involved in this case addressed the relevant [question] in arguing and deciding the case." Moore v. Commonwealth, 276 Va. 747, 754, 668 S.E.2d 150, 154 (2008). The Attorney General acknowledged at oral argument that the trial court and the appellee on appeal were fully cognizant of appellant's position. Thus, we find that appellant's departure from his question presented is not substantial. This issue is not defaulted pursuant to Rule 5A:12. See id. at 753, 668 S.E.2d at 154 (concluding that an appeal should not be dismissed for violation of a non-jurisdictional rule without considering "whether a party's failure to adhere strictly to the rule's requirements is insignificant, or so substantial as to preclude the court's addressing the merits of the case." (citing Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008))).

- 2 -

Code § 18.2-53.1 provides in relevant part:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery, . . . .

"[W]e review the trial court's statutory interpretations and legal conclusions *de novo*." Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004) (citing Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998)).

In Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002), the Supreme Court defined a firearm as "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Appellant contends that if an object is not used to expel a projectile, it is not being used as a "firearm" and, therefore, its "use" is not prohibited by Code § 18.2-53.1.

Although we construe statutes strictly in criminal cases, we will not apply "an unreasonably restrictive interpretation of the statute" that would subvert the legislative intent expressed therein. Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979). "'[T]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'" Newton v. Commonwealth, 21 Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)). We find no language in Code § 18.2-53.1 that restricts its application to using firearms only in instances where the firearm expels a projectile by force.

In Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980), and Wubneh v. Commonwealth, 51 Va. App. 224, 656 S.E.2d 418 (2008), the Courts address whether an object can be classified as a "firearm" based upon the firing capabilities of the object. In essence, the cases simply determine whether a purported firearm may be deemed a "firearm"

- 3 -

for purposes of enforcing Code § 18.2-53.1.  Here, however, appellant concedes the weapon used by "Al" was a firearm, a nine-millimeter pistol.  The only question is whether the statute limits the manner in which a gun must be used in order to violate the statute.

Other jurisdictions have specifically addressed the issue of a gun being used as a club and have found that the concept of "use" should be broadly construed.  The Kansas Court of Appeals was asked to determine whether the appellant, who struck his ex-wife on her head with a gun, was properly classified by the Department of Corrections for purposes of sentencing because he "used a firearm in the commission of [a] crime."  Finding that he did, the court stated:

> Within the context of [the statute], we believe that the concept of "use" should be broadly construed and conclude that [appellant] used a firearm in the commission of the aggravated battery within the meaning of the statute.  This is consistent with the legislative intent in Kansas to address public concern over the increased number of crimes involving firearms and with our Supreme Court's conclusion that enhancement of a sentence where a firearm is used is a legitimate effort to deter the use of a firearm.

State v. George, 891 P.2d 1118, 1125 (Kan. Ct. App. 1995).  In reaching its conclusion, the Kansas Court of Appeals considered a previous Kansas Supreme Court case, State v. Smith, 654 P.2d 929 (Kan. 1982), in which the court was called upon to determine whether the defendant used a rifle within the meaning of a firearm statute.  There, the defendant and the victim each had their hands on defendant's rifle and were struggling to gain sole possession of the weapon.  Smith, 654 P.2d at 934.  During the struggle, the victim fell over the balcony railing and the defendant argued this did not constitute "use" of a firearm within the meaning of the firearm statute.  Id.  The Kansas Supreme Court disagreed, stating that "defendant's 'mighty heave' on the firearm is what pulled [the victim] over the railing . . . ," rendering the rifle "the instrumentality of the aggravated battery."  Id.  Considering this, the Kansas Court of Appeals in George concluded:

> Smith is a clear statement by the Supreme Court [of Kansas] that use of a gun in an aggravated battery is not limited to firing it for purposes of the statute. If using a gun to push someone over a railing is use of a firearm, it follows that hitting someone with a gun -- a more direct utilization of the gun -- is also a contemplated use.

George, 891 P.2d at 1124.

In People v. Reaves, 117 Cal. Rptr. 163 (Cal. Ct. App. 1974), the California Court of Appeal approved a jury instruction which stated that use of a firearm includes "not only an intentional discharge thereof but also the use thereof as an object with which to hit or strike or display in a menacing manner." Id. at 165. In noting that it is the desire of the legislature to prevent death and injury as a result of the involvement of firearms in the commission of crimes, the California court read the statute broadly and concluded:

> [T]he intentional firing of the gun is use of the firearm. The display of the gun in a menacing manner as a means of accomplishing a robbery or the employment of the gun to strike or "pistol whip" the victim is certainly "use" of the gun in the commonly accepted definition of that term. Because either such "use," i.e., the menacing display of or striking the victim with the gun carries the ever-dangerous potential of a discharge of the firearm, both such "uses" are properly included within the spirit and purpose of [the statute]. Thus by defining what constitutes "use" of a firearm, [the statute] necessarily informs the jury that "use" is different than being "armed."

Id. at 166.

We further note that "[n]o court of appeals ever has held that using a gun to pistol-whip a victim is anything but the 'use' of a firearm . . . ." Smith v. United States, 508 U.S. 223, 233 (1993); see also Bailey v. United States, 516 U.S. 137, 148 (1995) ("The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, *striking*, and most obviously, firing or attempting to fire a firearm." (emphasis added)).

"A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning."

Loudoun County Dep't of Social Servs. v. Etzold, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993). "Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).

We observe that our legislature did not define the term "use," nor did it offer examples of how one might "use" a firearm. Thus, we are obligated to give "use" its ordinary and plain meaning. Webster's dictionary defines use as "to employ for some purpose; to put into service." Random House Webster's College Dictionary 1414 (2d ed. 1997).

The purpose of Code § 18.2-53.1 is to deter violent criminal conduct. Holloman, 221 Va. at 198, 269 S.E.2d at 358. The statute is aimed at preventing actual physical injury and also to discourage criminal conduct that produces fear of physical harm. Id.

Keeping in mind the purpose of the statute, we are not persuaded by appellant's argument that she cannot be convicted because she did not use the gun in the manner for which it was designed, namely, to expel a projectile by force. Once the object satisfies the definition of a firearm, any use of the firearm that is intended to cause physical injury is a violation of Code § 18.2-53.1. Clearly, appellant used the gun to inflict physical harm in order to accomplish the robbery. To conclude that the gun was not "used" in the commission of the robbery would be to read the statute too narrowly and is contrary to the legislative intent. Accordingly, we find that appellant used the firearm in the commission of robbery.

Victim's Perception of a Firearm

Appellant argues that a victim's perception of the weapon as a firearm is necessary to sustain a conviction pursuant to Code § 18.2-53.1.[3] It is undisputed that "Al" possessed a

---

[3] Appellant does not challenge her status as a principal in the second degree.

nine-millimeter pistol and struck L.S. in the head with the gun. It is also important to note that appellant is not contesting that the weapon was actually a firearm. Appellant reasons that because L.S. never saw the gun, appellant's conviction should be reversed. For the reasons that follow, we conclude that a victim's perception is relevant only in those instances when a perpetrator is "display[ing] such weapon in a threatening manner." See Code § 18.2-53.1.

As previously stated, the purpose of Code § 18.2-53.1 is to deter violent criminal conduct. Holloman, 221 Va. at 198, 269 S.E.2d at 358. "The statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." Id. In Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994), the Supreme Court explained, "the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm *or* displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." (Emphasis added).

Code § 18.2-53.1 is written in the disjunctive, prohibiting either the actual use of a firearm, *or* the display of a firearm in a threatening manner. See Gunn v. Commonwealth, 272 Va. 580, 586, 637 S.E.2d 324, 327 (2006) (holding that, where a statute uses the disjunctive term "or," the provisions of the statute "plainly encompass two distinct situations"). "'[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices.'" Lewis v. Commonwealth, 267 Va. 302, 314-15, 593 S.E.2d 220, 227 (2004) (quoting Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 640 (1999)). We conclude that the distinction between using and displaying the firearm is critical, as the former is intended to protect against physical injury whereas the latter is directed at preventing the fear of physical harm. Thus, in evaluating appellant's argument, we must consider whether appellant's

behavior pertains to prong one of the statute, namely *use* of a firearm, or prong two, *display* the firearm in a threatening manner.

Citing Holloman and Wubneh, appellant argues that a victim must believe the weapon used against her is a firearm in order to sustain a conviction. We note from the outset that in these cases, appellate courts reviewed application of Code § 18.2-53.1 as it related only to the second prong of the statute, namely displaying of the weapon in a threatening manner. As discussed above, we conclude that appellant used the firearm in the commission of the robbery, violating the first prong of the statute. We nevertheless review these cases in answering appellant's question of whether a victim is required to perceive the weapon as a firearm for a conviction to be sustained.

The sole issue in Holloman was whether the instrument in the appellant's possession was a "firearm" within the meaning of Code § 18.2-53.1. Although the instrument "appear[ed] in size, weight and shape to be a .45 caliber automatic pistol," it fired BBs "by the force of a spring, not by gunpowder." 221 Va. at 197, 269 S.E.2d at 357. In commenting that a crime victim "can be intimidated as much by a revolver that does not fire bullets as by one that does," the Court held that the evidence was sufficient to convict the appellant of using a firearm in violation of Code § 18.2-53.1, even though the instrument was fired by a spring rather than by gunpowder. Id. at 199, 269 S.E.2d at 358. Thus, the Holloman Court reviewed whether the object was a firearm under prong two of the statute, i.e., whether the weapon that was being displayed appeared to the victim to be a firearm, and not whether it was used against the victim. Thus, Holloman underscored the difference between actual violence and the victim's apprehension of physical harm.

In Wubneh, appellant pointed a BB gun at a taxicab driver, said "I have a gun," and demanded money. 51 Va. App. at 226, 656 S.E.2d at 419. He then hit the driver in the head

with a BB gun that looked like a nine-millimeter pistol, and took the driver's money.[4] Id. The issue before this Court was whether the BB gun satisfied the definition of firearm, specifically, having the appearance of firing capacity. Id. at 229, 656 S.E.2d at 420. We held that the evidence was sufficient for the firearm conviction because the weapon appeared to the victim to have firing capability. In referencing Holloman, we emphasized that crime victims are not expected to know the intricate mechanisms of a weapon; it is sufficient if they reasonably perceive the weapon to be one that is capable of firing a bullet. Id. at 230, 656 S.E.2d at 421.

Similarly, in Thomas v. Commonwealth, 25 Va. App. 681, 492 S.E.2d 460 (1997), this Court found the evidence was sufficient to prove a BB gun used by Thomas in a robbery was a firearm, based on the victim's observations and the appearance of the object. We stated,

> When determining whether a particular object is a "firearm," the fact finder may consider the victim's visual and nonvisual observations of the object, the victim's knowledge of firearms, the accused's representations about the object during the commission of the felony, expert testimony, and the appearance of the object itself when it is admitted into evidence.

Id. at 687, 492 S.E.2d at 463 (citations omitted). Again, Thomas addressed only the display of a firearm, not the actual use of a weapon.

Thus, it is clear that the victim's perception is relevant only in instances when the object is being displayed, not used. In such a case, the injury is intimidation or fear of physical harm. However, if the victim sustains actual physical injury from the use of an actual firearm, the victim's belief of whether or not the gun is a dangerous weapon is irrelevant. In those instances, the offense is completed when the injury is inflicted. Having already found that appellant used the firearm as contemplated by the statute, we find that in this case L.S. did not have to perceive the weapon to be a dangerous firearm for the conviction to stand.

---

[4] The Court never addressed the issue of whether appellant actually used the firearm by striking the driver in the head with the gun.

Taking appellant's argument to the extreme would obligate us to find that if a sniper kills or wounds someone from a great distance, and the victim never sees the weapon, the gunman could never be convicted of using a firearm in the commission of a felony pursuant to Code § 18.2-53.1. We decline to read the statute so narrowly. See Ansell, 219 Va. at 761, 250 S.E.2d at 761 (discussing that an accused is not entitled to a favorable result based upon an unreasonably restrictive interpretation of a statute).

The victim's injury in this case was physical. L.S.'s inability to perceive that she was being struck with a nine-millimeter pistol is irrelevant.

<u>CONCLUSION</u>

For the foregoing reasons, we conclude that the trial court did not err in finding appellant guilty of using a firearm in the commission of robbery. Accordingly, appellant's conviction is affirmed.

<u>Affirmed.</u>

McClanahan, J., concurring.

I agree with part one of the majority's analysis in support of the conclusion that appellant used a firearm in the commission of a robbery, in violation of Code § 18.2-53.1. Accordingly, I concur in affirming appellant's conviction.

I disagree, however, with part two of the majority's analysis regarding the relevance of a victim's perception of a firearm possessed by an accused under Code § 18.2-53.1. The statute is written in the disjunctive, making it a crime to either use a firearm *or* display a firearm in a threatening manner while committing robbery or one of the other specified felonies. Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994). Thus, once the majority concludes that appellant was guilty of *using* a firearm in the robbery based on the fact that the victim was hit in the head with a pistol, regardless of whether the victim perceived the pistol, no analysis is required under the second prong of the statute.

Furthermore, in addressing the second prong of Code § 18.2-53.1, the majority, in my opinion, renders an incorrect interpretation of the statute. The majority indicates that, where no physical injury has been inflicted upon the victim with the weapon in the accused's possession (unlike the instant case), only the second prong of Code § 18.2-53.1 is at issue, and the victim's perception of the weapon as a firearm is a necessary element of the crime. The majority reaches this conclusion based on its reading of Holloman v. Commonwealth, 221 Va. 196, 269 S.E.2d 356 (1980), and Wubneh v. Commonwealth, 51 Va. App. 224, 656 S.E.2d 418 (2008).

The Courts in both Holloman and Wubneh concluded that a BB gun constituted a "firearm" within the meaning of that term under Code § 18.2-53.1 because the BB gun possessed by the perpetrator in each of those cases gave the appearance of having a firing capacity. As such, proscription of the gun under the statute furthered the statute's intended purpose of discouraging criminal conduct that produces fear of physical harm, as well as preventing actual

physical injury or death. Holloman, 221 Va. at 198, 269 S.E.2d at 357-58; Wubneh, 51 Va. App. at 229-30, 656 S.E.2d at 420-21. In neither of those cases, however, did the Court indicate that the victim's perception of the gun was a prerequisite for sustaining a conviction under the second prong of Code § 18.2-53.1.[5] Rather, the issue was whether the gun should be included within the meaning of "firearm" under the statute as a matter of law.[6] In other words, while the determination of whether the gun constituted such a "firearm" was based on evidence of the gun's appearance, that determination was not premised upon or limited to the victim's perception of that appearance. In fact, the Supreme Court in Holloman did not address any evidence regarding the victim's perception of the gun. The Court, instead, made clear that its conclusion was based on the Court's own observation of the gun: "The object in question, part of the record on appeal, appears in size, weight and shape to be a .45 caliber automatic pistol [even though] [t]estimony showed it fires BBs by the force of a spring, not by gunpowder." Holloman, 221 Va. at 197, 269 S.E.2d at 357.[7]

---

[5] Conduct sought to be deterred by a criminal statute is not necessarily reflected in its entirety in the elements of the crime. See, e.g., Hix v. Commonwealth, 270 Va. 335, 341-47, 619 S.E.2d 80, 83-87 (2005) (affirming conviction of attempted indecent liberties with a minor under Code § 18.2-370 where defendant's targeted minor victim was, in fact, an adult undercover police officer). Thus, the fact that the intended purpose of Code § 18.2-53.1 is, in part, to discourage criminal conduct that produces fear of physical harm does not necessarily mean that proof of a victim's perception of a weapon in a perpetrator's possession, giving rise to such fear, is an element under either prong of the statute.

[6] More specifically, the issue was whether a BB gun could be considered a "firearm" under Code § 18.2-53.1 given that it expelled a projectile by something other than an explosion of gunpowder. In Holloman, the BB gun operated by a spring mechanism, Holloman, 221 Va. at 197-98, 269 S.E.2d at 357; and in Wubneh, the BB gun operated by pneumatic pressure, Wubneh, 51 Va. App. at 226-27, 656 S.E.2d at 419.

[7] In Wubneh, this Court considered testimony of both the victim and a witness to the robbery in which the BB gun was used in reviewing evidence of the gun's appearance. Wubneh, 51 Va. App. at 226, 656 S.E.2d at 419. Of course, in some cases, the victim will be the sole witness to the weapon in the defendant's possession. See, e.g., Byers v. Commonwealth, 23 Va. App. 146, 149-50, 474 S.E.2d 852, 855 (1996).

For these reasons, I concur in part one of the majority's analysis and its decision to affirm appellant's conviction, but disagree with and would exclude part two of the majority's analysis as dicta.