COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


SEAN COOK

                                                     MEMORANDUM OPINION* BY
v.        Record No. 1658-10-2                       JUDGE WILLIAM G. PETTY
                                                         DECEMBER 20, 2011

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                                   Sam Campbell, Judge

            David C. Fratarcangelo (Eliades and Eliades, P.C., on brief), for
            appellant.

            Joshua M. Didlake, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Sean Cook was convicted in a bench trial of malicious wounding, in violation of Code

§ 18.2-51, and use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.

On appeal, Cook argues, first, that the trial court erred in finding the evidence sufficient to

convict him of malicious wounding because the evidence did not support a finding of malice.

Second, Cook argues that the trial court erred in finding him guilty of the use of a firearm in the

commission of a felony because (1) the evidence did not prove that he used an actual firearm,

and (2) he cannot properly be convicted of the underlying felony, malicious wounding. For the

following reasons, we disagree with Cook's arguments. Therefore, we affirm his convictions.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

A. Malicious Wounding

Cook first contends that the trial court erred in finding the evidence sufficient to convict him of malicious wounding. Cook argues that the evidence did not support a finding of malice. We disagree.

"When reviewing the sufficiency of the evidence to support the verdict in a bench trial, 'the trial court's judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.'" Burrell v. Commonwealth, 58 Va. App. 417, 433, 710 S.E.2d 509, 517 (2011) (quoting Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999)). It is the prerogative of the trier of fact "'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Malice "includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief." Fletcher v. Commonwealth,

209 Va. 636, 640, 166 S.E.2d 269, 273 (1969). Moreover, "malice is implied by law from any willful, deliberate and cruel act against another, however sudden." Id.

Cook argues that he did not act with malice because he acted in defense of his housemate, William Roy Hoyer.[1] Cook maintains that he reasonably believed Hoyer was free from fault because the victim, Shawn Rhodes, initiated the altercation with Hoyer. Like self-defense, defense of others is an "affirmative defense[] for which the accused has the burden of persuading the fact finder that he or she acted in defense of . . . another to the degree necessary to raise a reasonable doubt about his or her guilt." Lynn v. Commonwealth, 27 Va. App. 336, 352, 499 S.E.2d 1, 9 (1998). Under the law regarding defense of others, "[o]ne must reasonably apprehend death or serious bodily harm to another before he or she is privileged to use force in defense of the other person. The amount of force which may be used must be reasonable in relation to the harm threatened." Foster v. Commonwealth, 13 Va. App. 380, 385-86, 412 S.E.2d 198, 202 (1991). Furthermore, "one may avail himself or herself of the defense only where he or she reasonably believes, based on the attendant circumstances, that the person defended is without fault in provoking the fray." Id. at 386, 412 S.E.2d at 202.

Here, the finder of fact could have found that Cook did not reasonably believe Hoyer was without fault in provoking the fight with Rhodes. When Rhodes' wife invited Rhodes into the house where she was, Cook and Hoyer were both present, and they asked Rhodes who had given him permission to come in. Rhodes responded that his wife had let him in, and Cook and Hoyer told Rhodes that his wife did not live there and that he needed to leave. Rhodes said that if he had to leave, then his wife and daughter needed to leave too. Hoyer then "got in [Rhodes'] face" and was yelling at him to leave, while Cook went into another room and returned with a pistol.

---

[1] Of course, properly speaking, defense of others does not simply negate malice, but is a complete defense to a crime, since it is a justification for using force to defend a third person. See Foster v. Commonwealth, 13 Va. App. 380, 385-86, 412 S.E.2d 198, 201-02 (1991).

- 3 -

After Rhodes pushed his wife out the door and told his daughter she needed to come out, Hoyer tried to push Rhodes. Rhodes "blocked [Hoyer's] hand off," and a fight ensued. At some point, Cook moved forward and hit Rhodes on the head with the butt end of the pistol. Cook continued to hit Rhodes with the pistol repeatedly. Hoyer eventually grabbed a metal rod and started hitting Rhodes with it as well. Rhodes sustained numerous injuries from the encounter and left after his wife pulled him out of the house.

We cannot say that the finder of fact was bound to conclude, based on this evidence, that Cook reasonably believed Hoyer was without fault in provoking the fight with Rhodes. Furthermore, this evidence does not require a finder of fact to believe that Cook "reasonably apprehend[ed] death or serious bodily harm to [Hoyer]," or that the amount of force Cook used was "reasonable in relation to the harm threatened." Foster, 13 Va. App. at 385, 386, 412 S.E.2d at 202. Thus, we conclude that the trial court did not err in finding that Cook failed to carry his "burden of persuading the fact finder that he . . . acted in defense of . . . another to the degree necessary to raise a reasonable doubt about his . . . guilt." Lynn, 27 Va. App. at 352, 499 S.E.2d at 9.

Cook further argues that he did not act with malice because he acted in the heat of passion. "Virginia has long recognized that malice and heat of passion cannot coexist. Proof of malice excludes the presence of passion, and proof of passion presupposes the absence of malice." Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976). "'Heat of passion' refers to the *furor brevis* which renders a man deaf to the voice of reason." Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 514 (1998). A person acts in the heat of passion, and thus without malice, "'when provocation reasonably produces fear [or anger] that causes [him] to act on impulse without conscious reflection.'" Rhodes v. Commonwealth, 41

Va. App. 195, 200, 583 S.E.2d 773, 776 (2003) (first alteration in original) (quoting Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000)).

"Generally, whether the accused acted in the heat of passion is a question of fact . . . ." Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 843 (1987). Based on the evidence here, the trier of fact was free to conclude that Cook did not act in the heat of passion. Cook left the room to retrieve a pistol before Rhodes and Hoyer ever starting fighting. Subsequently, after Hoyer tried to push Rhodes and the two men began to fight, Cook joined in the fray and hit Rhodes repeatedly with the pistol. The trier of fact was certainly entitled to conclude that Cook was not "deaf to the voice of reason," Caudill, 27 Va. App. at 85, 497 S.E.2d at 514, and that there was no provocation that reasonably produced such fear or anger in Cook as would have caused him "'to act on impulse without conscious reflection,'" Rhodes, 41 Va. App. at 200, 583 S.E.2d at 776 (quoting Graham, 31 Va. App. at 671, 525 S.E.2d at 571).

Furthermore, Cook also argues that the trier of fact cannot impute malice to his actions because the Commonwealth did not prove he used a deadly weapon. Generally, a trier of fact "'may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, [it has] a reasonable doubt as to whether malice existed.'"[2] Thomas v. Commonwealth, 279 Va. 131, 160, 688 S.E.2d 220, 236 (2010) (quoting Strickler v. Commonwealth, 241 Va. 482, 495, 404 S.E.2d 227, 236 (1991)). "'A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character.'" Pannill v. Commonwealth, 185 Va. 244, 254, 38 S.E.2d 457, 462 (1946) (quoting

---

[2] Of course, we recognize that use of a deadly weapon is not necessary to support a finding of malice. Thus, while we address the argument raised by Cook, we also note that even if Cook were to convince us that he did not use a deadly weapon, he would still have to explain why there is no other evidentiary basis supporting a finding that he acted with malice.

40 C.J.S. Homicide § 25). One of those "'instruments which may under the circumstances of [its] use be regarded as [a] deadly weapon[]'" is "'a pistol or revolver used either for shooting or striking.'" Id. (quoting 40 C.J.S. Homicide § 25).

Here, the evidence amply supports the conclusion that Cook used a deadly weapon to inflict serious injuries on Rhodes. Rhodes testified that Cook hit him with a black automatic pistol. Rhodes stated that he had "been shooting guns since [he] was ten years old" and that he had "shot about ever [sic] handgun." Regardless of whether the pistol was capable of shooting, however, it was certainly used here for striking. The manner in which it was used demonstrates that it qualifies as a deadly weapon. See id. Rhodes testified that the pistol was heavy and that it was metal. A heavy metal object used to strike another person repeatedly may properly be considered a deadly weapon for the purpose of inferring malice from its deliberate use.[3]

Thus, we hold that the trial court did not err in finding the evidence sufficient to prove that Cook acted with malice when he assaulted Rhodes and beat him repeatedly with the butt end of a pistol.

### B. Use of a Firearm in the Commission of a Felony

Cook next contends that the trial court erred in finding him guilty of the use of a firearm in the commission of a felony. Cook argues that (1) the evidence did not prove that he used an

---

[3] In his brief, Cook contends that even if the instrument he used qualifies as a deadly weapon, "the use of a deadly weapon standing alone is insufficient to prove the specific intent required by law." Cook cites Hargrave v. Commonwealth, 214 Va. 436, 201 S.E.2d 597 (1974), in support of this proposition. Hargrave states that "[t]he use of a deadly weapon, standing alone, is not sufficient to prove the specific intent required to establish attempted murder." Id. at 437, 201 S.E.2d at 598. However, Cook was not convicted of attempted murder, which requires the specific intent to kill. See id. Rather, Cook was convicted of malicious wounding, and he is challenging the sufficiency of the evidence to prove that he acted with malice. When general malice is at issue, as opposed to the specific intent to kill, the use of a deadly weapon is sufficient of itself to permit an inference of such malice. See Thomas, 279 Va. at 160, 688 S.E.2d at 236 (noting that a trier of fact "'may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, [it has] a reasonable doubt as to whether malice existed'" (quoting Strickler, 241 Va. at 495, 404 S.E.2d at 236)).

actual firearm and that (2) he cannot properly be convicted of the underlying felony, malicious wounding. Because we have already concluded that Cook was properly convicted of malicious wounding, we need address here only his argument that he cannot be convicted because the evidence did not prove he used an actual firearm. We disagree with this argument.

Code § 18.2-53.1 provides: "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit [certain specified felonies, including malicious wounding]." As the Supreme Court has explained, "Code § 18.2-53.1 has dual objectives." Startin v. Commonwealth, 281 Va. 374, 379, 706 S.E.2d 873, 877 (2011) (citing Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980)). Not only does "the statute criminalize[] the use or display of an actual firearm that has the capability of expelling a projectile by explosion," but it "also has the additional purpose of preventing fear of physical harm by the use or threatening display of an instrumentality that has the appearance of having the capability of an actual firearm." Id. Thus, a "firearm" under Code § 18.2-53.1 "includes those items which, although lacking the physical capability of firing a projectile by explosion, have the appearance of having the capability to do so." Id. at 380, 706 S.E.2d at 877; see also Holloman, 221 Va. at 199, 269 S.E.2d at 358 (noting that a "firearm" for purposes of Code § 18.2-53.1 includes "an instrument which [gives] the appearance of having a firing capability, whether or not the object actually ha[s] the capacity to propel a bullet by the force of gunpowder").

Here, the evidence amply supports the conclusion that Cook used an instrument that appeared to have the capability of firing a projectile by explosion. As previously noted, Rhodes testified that he had extensive experience with handguns and that he believed Cook hit him with a black automatic pistol. The object was heavy, and it was metal. It was certainly an object

- 7 -

giving the appearance of being capable of firing a projectile by explosion. Thus, it was a "firearm" within the meaning of Code § 18.2-53.1.

Cook argues that Rose v. Commonwealth, 53 Va. App. 505, 673 S.E.2d 489 (2009), supports his position. In Rose, this Court was presented with the argument "that a victim's perception of the weapon as a firearm is necessary to sustain a conviction pursuant to Code § 18.2-53.1." Id. at 513, 673 S.E.2d at 492. In response, this Court held that "a victim's perception is relevant only in those instances when a perpetrator is '*display[ing]* such weapon in a threatening manner.'" Id. at 513, 673 S.E.2d at 492-93 (alteration in original) (emphasis added) (quoting Code § 18.2-53.1). "[I]f the victim sustains actual physical injury from the *use* of an actual firearm, the victim's belief of whether or not the gun is a dangerous weapon is irrelevant." Id. at 516, 673 S.E.2d at 494 (emphasis added). According to Cook, this means that although a defendant can be convicted of displaying a firearm upon proof that the object appeared to be a firearm, a defendant cannot be convicted of using a firearm without proof that the object was an actual firearm.

The appellant in Rose conceded that the weapon used in that case was an actual firearm. Id. at 510, 513, 673 S.E.2d at 491, 492. Thus, the question before the Court in Rose was different from the question before us. Rose held that "[o]nce the object satisfies the definition of a firearm, any use of the firearm that is intended to cause physical injury is a violation of Code § 18.2-53.1," id. at 512-13, 673 S.E.2d at 492, and that a victim's perception of the weapon as a firearm is not an additional element necessary to support a conviction for the use of a firearm in the commission of a felony, id. at 516, 673 S.E.2d at 494.

Here, Cook's argument concerns the definition of a firearm itself under Code § 18.2-53.1. Essentially, Cook's position is that a firearm is defined differently based on whether a defendant uses or merely displays that firearm in the commission of a felony. The problem with this

argument is that it is inconsistent with the plain language of Code § 18.2-53.1. "'[C]ourts apply the plain language of a statute unless the terms are ambiguous.'" Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 480, 666 S.E.2d 361, 368 (2008) (alteration in original) (quoting Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)). The plain language of Code § 18.2-53.1 prohibits any person from using a "firearm" or "display[ing] such weapon in a threatening manner." There is no reason to interpret "such weapon" to bear a different meaning from "firearm." The phrase "such weapon" refers back to "firearm" and does not create a new or distinct category of objects. There are not two definitions of "firearm" under Code § 18.2-53.1, one broader and one narrower. The definition of a "firearm" under Code § 18.2-53.1 is the same regardless of whether the defendant is accused of using or displaying the object. To hold otherwise would do violence to the plain language of the statute.

Since the evidence was sufficient to show that the object Cook used had the appearance of being capable of firing a projectile by explosion, we hold that the trial court did not err in finding Cook guilty of the use of a firearm in the commission of a felony.

III.

For the foregoing reasons, we affirm Cook's convictions.

Affirmed.