COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, AtLee and Malveaux
Argued at Norfolk, Virginia

**PUBLISHED**

DOLLAR TREE STORES, INC. AND
 ARCH INSURANCE COMPANY

v.      Record No. 1943-17-1

KATHLEEN TEFFT

OPINION BY
JUDGE MARY BENNETT MALVEAUX
JUNE 5, 2018

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Audrey Marcello (Matthew J. Moynihan; Taylor Walker, P.C., on
brief), for appellants.

Philip J. Geib (Philip J. Geib, P.C., on brief), for appellee.

Dollar Tree Stores, Inc. ("employer") appeals a decision of the Workers' Compensation

Commission ("the Commission") awarding benefits to Kathleen Tefft ("claimant").  On appeal,

employer argues that the Commission erred in finding that the composition of the review panel did

not violate Code §§ 65.2-200(D) and -705(D).  Employer further contends that the Commission

erred in finding that claimant adequately marketed her residual work capacity.  For the following

reasons, we affirm the decision of the Commission.

I.  BACKGROUND

On appeal, "[w]e view the evidence in the light most favorable to the prevailing party

below, and '[t]he fact that contrary evidence may be found in the record is of no consequence if

credible evidence supports the commission's finding.'"  Va. Polytechnic Inst. v. Posada, 47

Va. App. 150, 158, 622 S.E.2d 762, 766 (2005) (second alteration in original) (quoting Manassas

Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)).

Claimant was employed as an assistant freight manager at one of employer's stores. On March 31, 2015, claimant was unloading a truck when the driver of the truck "slammed . . . down" fifteen or twenty cases of freight on her. Claimant's arms were "yanked on both shoulders." After the incident, claimant experienced pain in her neck, shoulders, and arms.

On April 27, 2015, claimant was treated by Dr. Timothy Budorick, who placed her on work restrictions, including no unloading of trucks or lifting over ten pounds. On May 21, 2015, claimant was treated by Dr. Lawrence Donato, who imposed the same weight lifting restrictions. Dr. Donato also prohibited any overhead lifting. On July 21, 2015, Dr. Donato performed surgery on claimant's right shoulder. After her surgery, claimant was released to light-duty work on September 21, 2015, under certain work restrictions: no overhead lifting, no repetitive activity, no lifting of more than seven pounds, and sedentary work only. Following a November 18, 2015 appointment, Dr. Donato continued these same restrictions with a modified limit of lifting no more than five pounds. On December 17, 2015, he continued the same restrictions. At no point was employer able to accommodate claimant's restrictions.

Claimant started actively looking for a job within her restrictions on November 13, 2015. Claimant's educational background consisted of a high school education. She had previously worked as an assistant manager of a fast-food restaurant. Claimant initially looked for jobs from postings on the "Virginia [C]ommission site."[1] She could not find any jobs on that website so she "started just going to random places" online. The majority of her search was online. She applied for customer service and loss prevention jobs because they did not involve lifting, and were more just "walk[ing] around."

---

[1] The deputy commissioner interpreted this as a reference to the Virginia Employment Commission's website.

From November 2015 through the beginning of June 2016, claimant primarily applied for jobs with the Sears Corporation, including jobs at both Sears and K-Mart stores. Claimant testified that during this period she was told she had to apply for five jobs a week, and when there were not that many jobs available with Sears, she applied to other employers to get to five jobs. During this time, claimant applied to about twenty different employers other than Sears, with the majority of these applications submitted during the first two months of claimant's job search. The rest of the time, claimant applied for five jobs a week with Sears. Those jobs had a variety of position titles, and all had individual position numbers. Claimant testified that she did not apply to different employers during this time because, while all of the jobs were with Sears, she was applying to work in different stores. Further, because of her restrictions, there were not many suitable jobs for her. In December 2015, claimant went to one interview for a loss prevention job, but did not hear anything following the interview.

From the end of June through October 2016, claimant applied for five jobs a week exclusively at SuperValu stores.[2] The record reflects that these jobs had a variety of position titles and that all had individual position numbers. Claimant testified that these jobs were located in different SuperValu stores, and some were in Starbucks locations inside the stores. Claimant never received an interview for any SuperValu position.

On September 11, 2015, claimant filed a claim seeking medical benefits and temporary total disability benefits beginning April 27, 2015 and continuing. The parties stipulated that claimant was entitled to a medical award for an injury to her right shoulder and an award of temporary total disability benefits for the period of July 21, 2015 through September 21, 2015.

---

[2] Claimant testified that these applications were for Farm Fresh stores, which are owned by SuperValu.

Employer defended on several grounds, one of which was that claimant failed to market her residual work capacity.

On January 4, 2017, the deputy commissioner issued an opinion awarding claimant temporary total disability benefits for the periods of July 21, 2015 through September 21, 2015 and November 13, 2015 and continuing. The deputy commissioner found that claimant had proven that she suffered compensable injuries to both shoulders and her cervical spine, in addition to the right shoulder injury stipulated by employer. However, the deputy commissioner found that claimant only marketed her residual work capacity from November 13, 2015 on, and thus awarded her temporary total disability benefits only for that period of time in addition to the period of time stipulated by the parties.

Employer requested review by the full Commission. On November 1, 2017, the Commission issued an opinion affirming the decision of the deputy commissioner. The Commission found that claimant's marketing efforts were "reasonable and demonstrated her good faith," based upon its findings that claimant's work restrictions were "significant," that her high school education and lack of office work experience would make finding a job within her restrictions difficult, and that she had applied for "distinct jobs at specific places," including a "range of the same type of positions" at Sears and SuperValu. One commissioner dissented, finding that claimant failed to reasonably market her residual work capacity because the vast majority of her job search involved applying for five jobs a week with two employers, allowing her "to accumulate the number of contacts requisite to secure her entitlement to disability while exerting the least necessary effort."

The review panel consisted of Commissioners Marshall and Newman, and Chief Deputy Commissioner Szablewicz, who participated on the panel by appointment because Commissioner Rapaport had recused himself.

Employer filed a motion for reconsideration on November 13, 2017, arguing that the Commission did not follow Code §§ 65.2-200(D) and -705(D) in appointing Chief Deputy Commissioner Szablewicz to participate in the panel. On November 30, 2017, the Commission denied the motion for reconsideration, holding that the review panel as constituted did not contravene Code § 65.2-200(D).

## II. ANALYSIS

### A. Composition of Review Panel

On appeal, employer asserts that the Commission erred in finding that the composition of the review panel did not contravene the requirements of Code §§ 65.2-200(D) and -705(D).

"An issue of statutory interpretation is a pure question of law," and thus, we must conduct a *de novo* review. Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). This Court is "required to construe the law as it is written[,] and an erroneous construction by [the Commission] cannot be permitted to override the clear mandates of [the] statute." Danville Radiologists, Inc. v. Perkins, 22 Va. App. 454, 458, 470 S.E.2d 602, 604 (1996) (quoting Pavlicek v. Jerabek, Inc., 21 Va. App. 50, 58, 461 S.E.2d 424, 428 (1995)). "Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases." Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 249, 563 S.E.2d 368, 372 (2002). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers, 273 Va. at 104, 639 S.E.2d at 178. "[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id.

"The commission is a creature of statute and derives its authority from the General Assembly." Layne v. Crist Elec. Contr., Inc., 62 Va. App. 632, 637, 751 S.E.2d 679, 682 (2013). "[A]s such it is a matter of legislative prerogative as to the organization and authority of the . . .

Commission." Id. (alteration in original) (quoting Kim v. Sportswear, 10 Va. App. 460, 471, 393 S.E.2d 418, 424 (1990)).

Code § 65.2-200 formulates the Commission. It provides that the Commission "shall consist of three members" elected by the General Assembly. Code § 65.2-200(B). In addition, Code § 65.2-200(D) provides that

> [n]ot more than one member of the Commission shall be a person who on account of his previous vocation, employment or affiliation shall be classified as a representative of employers, and not more than one such appointee shall be a person who on account of his previous vocation, employment or affiliation shall be classed as a representative of employees.

Code § 65.2-705 outlines the procedure for reviewing an award. It directs the full Commission to hear appeals. Code § 65.2-705(A). Further, Code § 65.2-705(D) mandates that

> [w]hen a vacancy on the Commission exists, or when one or more members of the Commission are absent or are prohibited from sitting with the full Commission to hear a review, the Chairman may appoint one or more deputy commissioners or recall one or more retired members of the Commission to participate in the review. The retired member or members recalled shall be the member or members who occupied the seat for which such member or members are being recalled, unless the parties otherwise consent.

Employer contends that these statutes are clear and unambiguous, and "require that the members of the Commission, including any substitute members due to vacancy, be composed of not more or less than one representative of employers and employees on a review panel." In this case, employer asserts that this mandate was violated by Chief Deputy Commissioner Szablewicz's presence on the review panel. Employer argues that Chief Deputy Commissioner Szablewicz was an improper substitute because his past experience classified him as an

employee representative,[3] when another review panel member, Commissioner Marshall, was also an employee representative as defined by Code § 65.2-200(D). Thus, employer contends, there were two employee representatives on the review panel, in violation of the statutory requirements.

We agree with appellant's first contention that the language of the statutes at hand is unambiguous. However, based upon the plain language of Code §§ 65.2-200 and -705, we reject appellant's construction of the statutes and hold that the prior affiliation of a deputy commissioner appointed to serve on a review panel is irrelevant as to whether the panel was properly constituted.

We first examine Code § 65.2-705. As noted above, this code section provides, in pertinent part, that if a member of the Commission is absent from sitting with the full Commission to hear a review, "the Chairman may appoint one or more deputy commissioners *or* recall one or more retired members of the Commission to participate in the review." Code § 65.2-705(D) (emphasis added). The word "or" is a disjunctive that provides an alternative. See Rose v. Commonwealth, 53 Va. App. 505, 514, 673 S.E.2d 489, 493 (2009) ("[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." (quoting Lewis v. Commonwealth, 267 Va. 302, 314-15, 593 S.E.2d 220, 227 (2004))). As such, the statute provides that the Chairman may appoint either a deputy commissioner or, in the alternative, a retired member of the Commission, to serve on a review

---

[3] No evidence regarding Chief Deputy Commissioner Szablewicz's previous vocation, employment or affiliation was presented to the Commission below. On appeal, employer asks us to take judicial notice, pursuant to Code § 8.01-388, of the Commission's 2016 Annual Report, which describes Chief Deputy Commissioner Szablewicz's prior experience as working in the private practice of law primarily representing injured workers. As we find that it is unnecessary, for purposes of this appeal, to determine the nature of Chief Deputy Commissioner Szablewicz's prior experience, we do not address whether it would be proper for us to take judicial notice of the Commission's 2016 Annual Report.

panel if a member of the Commission is absent. The next sentence of the statute reads: "[t]he retired member or members recalled shall be the member or members who occupied the seat for which such member or members are being recalled, unless the parties otherwise consent." Code § 65.2-705(D). Appellant construes this language to mean that the deputy commissioner is a "member" as referenced in this sentence, and thus must have the same classification as the commissioner they are replacing on the review panel. Clearly the term "member" in the statute exclusively references "the retired member or members recalled"—*i.e.*, retired members of the Commission that can participate in review panels by designation of the Chairman. Under the plain language of Code § 65.2-705(D), the statute only requires that when a retired member of the Commission is recalled to serve on a review panel, they must occupy "the seat"—*i.e.*, be of the same classification under Code § 65.2-200—as the Commission member they are replacing. As this portion of the statute plainly refers only to "retired members" of the Commission, it does not compel the conclusion that a deputy commissioner, serving by appointment on a review panel, must be of a certain affiliation.

A review of Code § 65.2-200(D) further supports this conclusion. Code § 65.2-200(D) provides that "[n]ot more than one member of the Commission" shall be an individual with an employer representation background or an individual with an employee representation background. This code section refers solely to the composition of the Commission itself; its plain language provides no commentary on any prior affiliation requirement for deputy commissioners appointed to a review panel under Code § 65.2-705(D). This reading of the statute is supported by other sections of the Virginia Workers' Compensation Act, as the Act clearly distinguishes members of the Commission from deputy commissioners. See Code § 65.2-201(B) (providing that one of the powers of the Commission is the ability to appoint deputies); Code § 65.2-203(A) (outlining the duties and powers of deputy commissioners,

- 8 -

including the ability to subpoena witnesses, administer oaths, take testimony, decide the issues in a summary manner, and make award decisions, as well as "exercise other powers and perform any duties of the Commission delegated to them by the Commission").

"We 'are not authorized to amend, alter or extend the [Workers' Compensation] Act's provisions beyond their obvious meaning.'" Peacock, 38 Va. App. at 248-49, 563 S.E.2d at 372 (alteration in original) (quoting Cross v. Newport News Shipbuilding and Dry Dock Co., 21 Va. App. 530, 533, 465 S.E.2d 598, 599 (1996)). Here, the language of both Code § 65.2-705(D) and Code § 65.2-200(D) is clear and unambiguous. If the General Assembly had intended for deputy commissioners appointed to sit on review panels to have the same prior experience as the Commission members they were replacing, it could do so, but clearly has not.

In the instant case, a commissioner was absent due to his recusal. The Chairman of the Commission, pursuant to Code § 65.2-705(D), properly appointed a deputy commissioner to participate in the review panel in light of the commissioner's absence. The deputy commissioner was not and had never been a "retired member" of the Commission. Therefore, his background as either an employee or employer representative was irrelevant, and the Commission did not err in finding that the review panel was properly constituted when it issued the opinion in this case.

### B. Duty to Market Residual Capacity

On appeal, appellant further argues that the Commission erred in finding that the claimant adequately marketed her residual work capacity.

In order to establish entitlement to temporary disability benefits, a partially disabled claimant "must prove that he made a reasonable effort to market his residual work capacity." Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220, 527 S.E.2d 451, 453 (2000). "The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact finding judgment of the [C]ommission, and its decision on that

question, if supported by credible evidence, will not be disturbed on appeal." Id. at 220-21, 527 S.E.2d at 453. "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989).

"There are no fixed guidelines for determining what constitutes a 'reasonable effort' by an employee to market residual work capacity." Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 579 (2008) (quoting Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987)). However, the Commission considers the following factors:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv., 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted). "In sum, an employee 'must present some evidence that he [has] engaged in a good[-]faith effort to obtain work within the tolerance of his physical condition and has failed to find a job, either due to his injury or because no such work was available in the community.'" Favinger, 275 Va. at 90, 654 S.E.2d at 579 (quoting Nat'l Linen Serv., 8 Va. App. at 271, 380 S.E.2d at 34).

In the instant case, the Commission found that, while "[i]t may have been wise [for claimant] to expand her job search," her marketing efforts were reasonable. In making this determination, the Commission found that claimant's work restrictions were "significant." In addition, it found that her high school education and lack of office work experience would make finding a job within her restrictions difficult. Further, in reviewing claimant's job search history, the Commission found that claimant applied for "distinct jobs at specific places," including a

"range of the same type of positions" at Sears and SuperValu. These findings are supported by credible evidence in the record, including claimant's testimony and list of job contacts.

Nonetheless, employer contends that claimant's job search record demonstrates that she did not engage in a reasonable effort to market her residual work capacity because two employers represented over 90% of her employment applications. We acknowledge, as did the Commission below, that it may have been prudent for claimant to expand her job search to other potential employers. However, we do not find that the nature of claimant's search is itself enough to render her marketing efforts unreasonable. Our case law only demands that a claimant's marketing efforts be reasonable, not perfect or successful. Here, claimant had a limited educational background, significant work restrictions, and past work experience that best suited her for positions precluded by those restrictions. The record also demonstrates that claimant applied for a variety of positions in different Sears and SuperValu locations. These factors must be considered along with the fact that the majority of claimant's applications were with only two employers; viewed in total, the Commission did not err in finding claimant's marketing efforts reasonable.

In addition, employer contends that claimant's testimony that during the period when she primarily applied with Sears she only applied to other employers "when it wasn't enough – because I was told I had to do five," demonstrated that her only interest was to find employers with five open positions, not those where she might have a reasonable expectation of obtaining employment. We find this argument without merit because credible evidence in the record supports the Commission's finding to the contrary—that claimant's job search, in light of all the circumstances, demonstrated a good-faith effort to market her residual work capacity. While claimant did apply only for five jobs a week, primarily with Sears and then SuperValu, she applied for a variety of distinct positions within these two employers that could accommodate

her work restrictions. She testified that because of her restrictions, there were not many suitable jobs available. The Commission, as fact finder, reasonably found that claimant's job search was in good faith, and this Court cannot say on appeal that this determination was plainly wrong.

Here, credible evidence in the record supports the finding that claimant's marketing was reasonable, in light of claimant's education and experience, as well as the nature of her work restrictions. Thus, we hold that the Commission did not err in making this determination.

### III. CONCLUSION

We hold that the Commission did not err in finding that the composition of the review panel did not contravene the statutory requirements. Further, there was credible evidence supporting the Commission's determination that claimant reasonably marketed her residual work capacity. Consequently, we affirm the decision of the full Commission.

<u>Affirmed.</u>