COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia

ALVIN FRANKLIN, III

v.        Record No. 1061-21-1

NEWPORT NEWS DEPARTMENT
 OF HUMAN SERVICES

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
APRIL 26, 2022

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Christopher Young for appellant.

Shannon M. Manning, Senior Assistant City Attorney (Thomas J.
Wright, V, Guardian *ad litem* for the minor children; Invictus Law,
on brief), for appellee.

Alvin Franklin, III ("father") appeals the circuit court's orders terminating his parental rights

to his three biological children.  Father argues that the circuit court erred in finding that the evidence

was sufficient to terminate his parental rights under Code § 16.1-283(E)(iii) and (iv).  Father also

argues that the circuit court erred "in admitting the 'surveillance of the incident' into evidence

because the video was not properly authenticated by a Custodian of Records."  We find no error

and affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Father and Yasmeen Wallace-Franklin ("mother") are the biological parents to the three children who are the subject of this appeal. Mother is also a biological parent to three older children, who are father's stepchildren.[2] All the children, except for mother and father's youngest child who was born later, lived together in father and mother's home during the events giving rise to this case.

On June 30, 2016, K.P., father's stepdaughter, age eleven at the time, was admitted to the hospital with "significant facial injuries," including bruises, one eye that was swollen shut, blood around the mouth and nose, and injuries to her extremities and buttocks. An officer with the Newport News Police Department interviewed K.P. on that date and obtained an arrest warrant for father, the alleged abuser, based on the information received. The Newport News Department of Human Services (the "Department") removed K.P. from the parents' custody and placed her in foster care. Mother, paternal grandmother,[3] and the remaining children went to the police station the next day for interviews. Father hid from authorities.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] The parental rights to the stepchildren are not at issue in this appeal. Father's abuse of his stepdaughter, however, is relevant to the issues.

[3] The paternal grandmother is father's mother. She is the grandmother of the children at issue in the appeal.

Mother alleged that K.P.'s injuries arose from an altercation that occurred between K.P. and her brother. Mother stated that she was not home at the time of the incident and that father had been "out in the front yard cutting grass." Paternal grandmother corroborated mother's story. During the interviews, the police officer noticed bruising on the other children who were present. Once the interviews were complete, the Department removed the remaining children from the parents' care based on the physical abuse of K.P. and "concerns that [mother] was not strong enough or able to protect the children from the abuser." During the removal, mother and paternal grandmother tried to abscond with the youngest child, forcing the police to pursue and stop them.

Once the children were in foster care, the police reviewed surveillance footage of the area at the time when the alleged incident took place. The testifying police officer obtained the footage from another detective who downloaded the footage in the "camera room" of the police department. The surveillance video itself was not admitted into evidence at trial, nor was it played at trial; however, the testifying police officer did give his account of what he personally observed on the video.

According to the police officer, the video showed "parts of the incident occurring" and demonstrated that both father and mother were, in fact, present at the time of the incident that caused K.P.'s injuries. The officer testified that the video corroborated the information received from K.P. during her interview at the hospital and contradicted mother's statements. At trial, father objected to the police officer's testimony regarding the surveillance footage, arguing that the video contained hearsay and the video itself was not properly authenticated. The circuit court overruled father's objection.

Based on the information obtained from K.P. and the surveillance footage, the police attempted to locate father. After several months, and with the help of U.S. Marshals and other

law enforcement organizations in Virginia and Maryland, authorities located and arrested father in September 2016.

Father ultimately pleaded guilty to malicious wounding under Code § 18.2-51.[4]  Father was sentenced to twenty years' incarceration, with ten years suspended, on the condition that he have no unsupervised contact with any minor child, and mother could not supervise any contact. The Department did not have any contact with father during his incarceration.

Following father's arrest and custodial interview, mother returned voluntarily to the police station for another interview.  During the interview, mother gave a second, different, story to law enforcement about how K.P. was injured.  Mother ultimately pleaded guilty to contributing to the delinquency of a minor and making a false statement during investigation of another's crime.

The Department investigated several relatives as possible placements for the children but determined that none were appropriate.  In September 2017, the Department petitioned to terminate father's parental rights to his three biological children.  The Newport News Juvenile and Domestic Relations District Court ("JDR court") dismissed the petitions in July 2019.  The Department appealed the dismissal of the petitions to the circuit court.  In November 2019, the JDR court entered permanency planning orders for father's biological children, approving the goal of "Adoption/Relative Placement."  The orders included the specific findings that "Termination of parental rights having been documented as being in the best interest of the child."  Father did not appeal these orders.

At trial in circuit court, the Department presented evidence that one of father's biological daughters had been in therapy before her foster placement and continued in therapy following

---

[4] The conviction order cited Code § 18.2-51, the malicious wounding statute, but it described the offense as attempted strangulation resulting in wounding or bodily injury.  At oral argument, the parties acknowledged it was in fact a malicious wounding conviction.

her placement. She also required a period of intensive home therapy in addition to her regular therapy. The foster mother testified that the child was unable to sleep at night without the foster mother sleeping on the floor of the child's bedroom. In addition, the foster family also had to place a chair under the door handle of their front door, check all the doors in the home to ensure that they were locked, place a baseball bat next to the child's bed, and enroll her in karate classes. The child also had an ongoing problem with hoarding food. The foster mother also testified that they had to call the youngest child by a nickname because he shared a name with father, and even hearing father's name would cause the older child to "scream and cry and throw things." Father's other daughter had issues "wetting herself." She also required and participated in "counseling-type" therapy to address her "tantrums," as well as speech therapy.

At the conclusion of the evidence, father moved to strike, which the circuit court took under advisement. Father did not present any evidence. On April 7, 2021, the circuit court entered orders terminating father's parental rights to his biological children under Code § 16.1-283(E)(iii) and (iv). Father's appeal followed.

## II. ANALYSIS

### A. Admission of evidence

With respect to evidence surrounding K.P.'s injuries, father argues that the circuit court erred in "admitting the 'surveillance of the incident' into evidence because the video was not properly authenticated by a Custodian of Records." Father maintains that the "indicative information relayed on the disc such as the date and time are hearsay and should not have been allowed to be introduced as evidence."[5]

---

[5] Father's assignment of error addresses only whether the video was "properly authenticated." It does not include or otherwise assign error on hearsay grounds. Nevertheless, we need not resolve whether his assignment of error was sufficient to address both issues, because the video itself was not admitted into evidence. *See Foltz v. Commonwealth*, 58 Va. App. 107, 114 (2011) ("[W]e seek to decide cases, 'on the best and narrowest ground

"[T]he admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (second alteration in original) (quoting *Surles v. Mayer*, 48 Va. App. 146, 177 (2006)).

Father's assignment of error and argument regarding admissibility of the surveillance video mischaracterizes the underlying facts of what transpired at trial, as no such video was admitted into evidence. Nor was the video itself played at trial. Rather, the testifying police officer gave a brief account of what he personally observed on the video. Because no surveillance video was admitted into evidence, we will not address father's argument that the video itself was hearsay and not properly authenticated.

### B. Termination of parental rights

Father argues that the circuit court erred in terminating his parental rights with respect to his three children under Code § 16.1-283(E)(iii) and (iv). Specifically, father maintains that the Department failed to prove by clear and convincing evidence that: (a) termination was in the best interests of the children; (b) father was "convicted of an offense that constitutes felony assault, bodily wounding, resulting in serious bodily injury, when the [victim] of the offense was a child with whom the parent resided at the time of such offense;" and (c) father had subjected any child to aggravated circumstances.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo*, 68 Va. App. at 558 (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). Generally, trial courts have broad discretion

---

available' from the record." (quoting *Kirby v. Commonwealth*, 50 Va. App. 691, 698 n.2 (2007))), *aff'd*, 284 Va. 467 (2012).

"in matters of a child's welfare, and its 'determination of matters within its discretion is reversible on appeal only for an abuse of that discretion.'" *King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 211 (2018) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Code § 16.1-283(E) provides that a parent's parental rights may be terminated

> if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . (iii) the parent has been convicted of an offense under the laws of the Commonwealth . . . that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense; or (iv) the parent has subjected any child to aggravated circumstances.

### 1. Best Interests of the Children

Father argues that the Department failed to show that termination of father's parental rights was in the best interests of father's three children because there was no evidence establishing that father "was unable to provide a safe home in the future for his children." We disagree.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 319 (2013) (quoting *Logan*, 13 Va. App. at 128). "'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 48 (2014) (quoting *Peple v. Peple*, 5 Va. App. 414, 422 (1988)). "Instead, '[t]he question must be resolved

. . . in light of the facts of each case.'" *Eaton v. Washington Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 331 (2016) (alterations in original) (quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)).

At the conclusion of trial, the children had already been in the Department's custody for four years. Father was convicted of malicious wounding, described in the conviction order as attempted strangulation resulting in wounding/bodily injury to his stepdaughter. He was sentenced to twenty years' incarceration, with ten years suspended, stemming from the physical abuse he inflicted on K.P., a child living in his home. Father's suspended sentence was conditioned on no unsupervised contact with any minor child. Father has been, is, and will be in no position to care for his children for a long time. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Beyond his incarceration and physical abuse of K.P., father's behavior caused his children mental trauma as well. One of father's daughters was unable to sleep at night without her foster family undertaking extraordinary efforts to make her feel comfortable and safe. The mental trauma was so significant, the foster family had to call the youngest child by a nickname because he shared a name with father and even hearing father's name caused the older child to "scream and cry." Both of his daughters require ongoing therapy, and one child has ongoing food issues while the other had issues with "wetting herself." The evidence in the record suggests that the current foster family is providing father's children a safe, stable environment. Therefore, we will not disturb the circuit court's ruling that there was clear and convincing evidence that it is in the children's best interests to terminate father's parental rights.

## 2. Grounds for Termination

Once there is a finding that termination is in a child's best interests, the trial court must still determine whether one of the statutory grounds of termination has been met. Father argues that the Commonwealth did not prove either ground for termination under Code § 16.1-283(E). We disagree.

Code § 16.1-283(E)(iii) permits a court to terminate the parental rights of a parent who

> has been convicted of an offense under the laws of the Commonwealth . . . that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury . . . if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense[.]

Serious bodily injury is defined as "bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Code § 16.1-283(E).

There is no dispute that father was convicted of a felony assault. Father disputes only whether K.P.'s injuries constituted "serious bodily injury" as defined by the statute. Father argues that his stepdaughter's injuries did "not have a degree of permanence and do not coincide with the statutory definition of serious injury."[6] We disagree.

The injuries before the Court in the past have involved a greater risk of death or permanent injury than those suffered by K.P. *See King*, 69 Va. App. 206 (death); *Yafi*, 69 Va. App. 539 (head trauma, splintered vertebra, permanent blindness, loss of brain tissue);

---

[6] During oral argument, father argued that the bodily injury had to be equivalent to "torture or near death" to constitute serious bodily injury. Father's argument conflates subsection (E)(iii) and (E)(iv). Under Code § 16.1-283(E)(iv), "aggravated circumstances" is defined as "torture, chronic or severe abuse, or chronic or severe sexual abuse . . . which conduct . . . has resulted in the death of such a child or in serious bodily injury to such a child." Because we decide the issue under Code § 16.1-283(E)(iii), we need not consider the additional requirements of subsection (E)(iv).

*Brown v. Spotsylvania Dep't of Soc. Servs.*, 43 Va. App. 205 (2004) (fractured skull).  But Code § 16.1-283(E) uses the word "or" in defining the types of injuries that constitute "serious bodily injury."  "[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices."  *Dollar Tree Stores, Inc. v. Tefft*, 69 Va. App. 15, 25 (2018) (alteration in original) (quoting *Rose v. Commonwealth*, 53 Va. App. 505, 514 (2009)).  One of the alternatives listed in the statute is bodily injury involving "extreme physical pain."  Code § 16.1-283(E).

At trial, the Department presented photos of K.P.'s injuries.  The photos show that K.P. suffered extensive injuries resulting from father's abuse.  One of K.P.'s eyes was bruised and swollen completely shut, while her opposite temple had multiple bruises.  She had swelling and bleeding around and inside her mouth and nose.  Additionally, she had significant bruising all over her extremities.  The injuries to her face and extremities could only be caused by multiple and repeated blows.  We are conscious of the fact that an adult male delivered these blows to an eleven-year-old child.  Furthermore, father pleaded guilty to, and was convicted of, maliciously wounding K.P. in an attempt to strangle her.

Father argued that there was no evidence in the record that K.P. suffered *extreme* physical pain.  But viewing the above facts in the light most favorable to the Department, we conclude that the evidence is sufficient to demonstrate K.P.'s injuries meet the definition of "serious bodily injury" because they involve "extreme physical pain."

Based on father's felony assault on K.P., the circuit court did not err in terminating father's parental rights to his three biological children under Code § 16.1-283(E)(iii).  *See Yafi*, 69 Va. App. at 554 (holding that Code § 16.1-283(E)(iii) "expressly permits the termination of the parental rights of any or all of a parent's children when he or she has been convicted of

felony assault resulting in serious bodily injury" if the victim was a child of the parent or a child with whom the parent resided at the time of the offense).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (holding that because the Court affirmed termination of parental rights under one subsection of Code § 16.1-283, it did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(E)(iii); therefore, we do not need to reach the question of whether father's parental rights also should have been terminated under Code § 16.1-283(E)(iv).

### III. CONCLUSION

Upon reviewing the record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

*Affirmed.*