COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges AtLee and Frucci

JOSHUA TYRONE HARRIS

v.      Record No. 1493-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 12, 2025

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Tonya Henderson-Stith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; John A. Fisher, Assistant
Attorney General, on brief), for appellee.


Joshua Tyrone Harris appeals his jury-trial convictions for malicious wounding,

maliciously shooting within an occupied building, possession of a firearm by a previously

convicted violent felon, and use of a firearm during the commission of a felony, second or

subsequent offense, in violation of Code §§ 18.2-51, -53.1, -279, and -308.2. He challenges the

sufficiency of the evidence to support these convictions. He also contends that the trial court

abused its discretion by allowing the victim to remain in the courtroom throughout the trial.[1] We

hold the trial court did not err, and we affirm the convictions.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Harris previously raised a third assignment of error but did not brief it, so we do not
consider it on appeal. *See* Rules 5A:20(c)(1) (stating that "[o]nly assignments of error listed in
the brief will be noticed by th[e] Court [of Appeals]"), 5A:25(d) (providing that in appeals of
right, "'preliminary . . . assignments of error' . . . are non-binding").

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument." *See* Code § 17.1-403(ii)(c)**;** Rule 5A:27(c).

BACKGROUND[3]

One evening in September 2018, Timothy Lanier was at a bar, the White Oak Lodge, celebrating his college admission with friends.[4] Joshua Harris, whom Lanier did not know, was at the White Oak Lodge with a different group of friends.

Lanier noticed one of his friends arguing with one of Harris's friends. Harris intervened, hitting Lanier's companion in the face, and Lanier then hit Harris in the face. Lanier and Harris fought for about thirty seconds. Lanier also fought with two of Harris's friends. Someone pulled Harris away from Lanier, and Harris left the bar.

Lanier, believing that the altercation was over, turned to check on his friends. While he had his back to the door, he noticed that everyone in the bar "stepped back." When he turned, Harris was holding a gun to the side of Lanier's head. Lanier told Harris to "get th[e] gun away from [his] face" and removed Harris's hand from his head. Harris responded, "I'll kill you," and put the gun back up to Lanier's head. As Lanier hit Harris's hand and forearm in a downward motion, Harris fired the weapon, and the bullet struck Lanier's shoulder. Lanier fell to the ground. Someone put pressure on his wound to stop the bleeding. He blacked out and woke up in a hospital.

---

[3] On appeal, the Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, the Court discards any evidence that conflicts with the Commonwealth's evidence and regards as true all the credible evidence favorable to the Commonwealth and all inferences that can fairly be drawn from that evidence. *Cady*, 300 Va. at 329.

[4] Portions of the record in this case were sealed. "To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Chaphe v. Skeens*, 80 Va. App. 556, 559 n.2 (2024) (quoting *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022)).

Employees at the White Oak confirmed that Harris, a "regular" at the bar, was the shooter, and he was charged with the instant offenses. At the ensuing jury trial in 2024, the Commonwealth presented testimony from two eyewitnesses and Lanier.

Scott Pritchett, the owner and manager of the White Oak, testified that he saw Harris and Lanier fighting near the bar's entrance. After Pritchett broke up the fight, Harris left but returned with a "pistol drawn right at" Lanier. Pritchett saw Lanier wrestle with Harris and watched as "the gun went off." At trial, he identified Harris as the person with the gun.

Jacob White, the kitchen manager at the White Oak, also identified Harris as the shooter. According to White, Harris was "a regular" who "was in there quite often." On the night of the shooting, the bar was "[n]ot [as] busy as . . . usual[]," with no more than fifteen to twenty people present. White heard a "commotion from the bar area," left the kitchen to investigate, and saw Lanier and Harris "having a tussle." White helped Pritchett break up the fight but heard Harris's "girlfriend" say, "Go get the gun." Harris responded, "I'm-a go get that thing," and walked out the door. Within a minute or two, Harris returned to the bar with "a gun in [his] hand," which he put "directly to the victim's face." White watched as the two men engaged in "a scuffle over the gun." "[E]ventually the gun went off." Lanier "got hit in the shoulder," and Harris fled.

Lanier confirmed that he was unarmed the night he was shot. He described removing the gun from his head twice by hitting Harris's hand and pushing down on his arm, but he insisted that he never touched the gun itself. Lanier confirmed that Harris was the person who shot him.

Harris made a motion to strike the Commonwealth's evidence, arguing that the fact that a struggle preceded the shooting negated a finding of malice. He also contended that because no firearm was introduced at trial, the evidence did not prove that Harris used a "device . . . fired for the purpose of an explosion to expel a projectile." Last, he challenged the ability of the witnesses to identify him six years after the shooting. The trial court denied the motion.

After closing arguments, the jury convicted Harris on all four charges. The trial court sentenced him to thirty years in prison with nineteen years suspended.

ANALYSIS

Harris contends that the trial court abused its discretion by allowing the victim to remain in the courtroom throughout the trial. He also argues that the evidence was insufficient to support his convictions.

I. Presence of the Victim in the Courtroom

Before trial began, the prosecutor notified the trial court that Lanier, the victim, had asked to remain in the courtroom during trial. She explained that he planned to testify and that it was her intent to "call[] the other two witnesses first." Defense counsel objected to Lanier's being in the courtroom while the prosecution's other witnesses testified, twice expressing concern that Lanier could "coordinate [his] testimony" with that of the other witnesses and thereby deprive Harris of a fair trial. The trial court, after reviewing the primary applicable statute, ruled that Lanier would be permitted to stay in the courtroom. Then, before Lanier took the stand, the trial court advised him that he was allowed to remain because his "particular status" "qualif[ied him] to do so." The court reminded him, as the prosecutor indicated she had told him before trial, that his testimony could be based only on what he knew, not on what he had heard other witnesses say during trial.

Harris challenges the trial court's ruling permitting Lanier to be present for the duration of the trial. He argues that the court abused its discretion because Lanier could "shape his testimony to coincide" with the other testimony and evidence presented. He maintains that the court "substantially impaired [his] right to a fair trial" on that basis.[5]

_____

[5] On brief, Harris also notes that his "concern that Lanier might attempt to shape his testimony to coincide with the testimony of" others arose in a case "involving offenses alleged to have occurred six years before [trial]." In the court below, however, defense counsel did not

- 4 -

A trial court's decision to allow a victim-witness to remain in the courtroom during trial is reviewed for an abuse of discretion. *Hernandez-Guerrero v. Commonwealth*, 46 Va. App. 366, 369 (2005). The exercise of discretion "preserves the common law principle that an appellate court should not examine the sequestration decision *de novo*." *Id.* This "standard requires [the appellate] court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (second alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). In short, this Court will hold that a trial court abused its discretion "[o]nly when reasonable jurists could not differ" as to the correct result. *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (per curiam)).

The Virginia General Assembly has expressly provided that "[d]uring the trial of every criminal case . . . , any victim as defined in § 19.2-11.01 may remain in the courtroom and shall not be excluded unless the court determines, in its discretion, [that] the presence of the victim would impair the conduct of a fair trial." Code § 19.2-265.01.[6] The Virginia Crime Victim and

---

mention this time delay or allege that it impacted the decision to allow Lanier to remain in the courtroom. Rule 5A:18 requires that objections must be both timely and specific to preserve a particular point for appeal. *See Bethea v. Commonwealth*, 297 Va. 730, 744 (2019). So we do not consider any impact of the six-year gap in evaluating whether the court erred by permitting Lanier to remain in the courtroom during the trial.

[6] It is undisputed that Lanier was a victim within the meaning of the statute. *See* Code § 19.2-11.01(B) (defining "victim" in pertinent part as "a person who has suffered physical . . . harm as a direct result of the commission of . . . a felony").

Witness Rights Act also recognizes that victims "shall have the right to remain in the courtroom during a criminal trial or proceeding." Code § 19.2-11.01(A)(4)(b) (citing Code § 19.2-265.01).

Consistent with these statutory provisions, a victim-witness who remains in the courtroom "inevitably hears the testimony of the [other] witnesses at trial either before he testifies on direct [examination] or before his opportunity to retake the stand in rebuttal. By itself, [therefore,] that observation cannot necessarily 'impair the conduct of a fair trial' under Code § 19.2-265.01." *Hernandez-Guerrero*, 46 Va. App. at 370. To sustain a claim of unfairness, the defendant must "proffer to the trial court facts [that], if true, would make the victim[-]witness uniquely vulnerable to being manipulated, consciously or not, by the suggestive power of other witnesses' testimony." *Id.* at 371. Stating merely that the victim-witness "may hear the testimony of others and be affected by it is facially insufficient" to justify depriving a victim-witness of these rights. *Id.*

To adequately support his objection to Lanier's presence in the courtroom, Harris was required to proffer facts that made Lanier uniquely vulnerable to being manipulated by the evidence presented. He did not do so. The record before this Court establishes that the trial court applied the statute, received no proffer (nor made a related finding) that Lanier was uniquely vulnerable to being manipulated, and reasonably concluded that it had no basis upon which to deny him his rights as a victim.

We hold the record does not establish that the trial court's ruling allowing Lanier to remain in the courtroom was an abuse of discretion.

## II. Sufficiency of the Evidence

"[O]ur legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of . . . [the] witnesses." *Walker v. Commonwealth*, 302 Va. 304, 316 (2023) (second alteration in original) (quoting *Kansas v. Ventris*, 556 U.S. 586, 594 n.* (2009)), *cert.*

*denied*, 144 S. Ct. 827 (2024).  And in "the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder.'"  *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (alterations in original) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one."  *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'"  *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).  "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion."  *Barney*, 302 Va. at 97 (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).  Instead, the question on appeal is "whether *any* rational trier of fact could have found the [challenged] elements of the crime beyond a reasonable doubt."  *Cappe v. Commonwealth*, ___ Va. ___, ___ (Feb. 13, 2025) (per curiam) (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Appellate review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Garrick*, 303 Va. at 183 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).  And "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every

reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). Any element of a crime can be proved using circumstantial evidence such as a defendant's statements and conduct. *Alston v. Commonwealth*, 77 Va. App. 639, 648 (2023).

We apply this well-established legal precedent when considering the issues on appeal.

Harris challenges the sufficiency of the evidence to support his convictions on three grounds. First, he contends the evidence was insufficient to prove he acted with the malice required to support his convictions for malicious wounding and the related firearm offense.[7] Second, he argues that the evidence failed to establish that he possessed an object meeting the definition of a firearm, as necessary to support his conviction for possession of a firearm by a convicted felon. Third, he claims that the evidence failed to prove his identity as the criminal actor, which implicates all four convictions. The Court considers each sufficiency challenge in turn.

### A. Malicious Wounding

"The element of malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied . . . ." *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). Malice is defined as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will."

---

[7] On appeal, Harris also challenges the sufficiency of the evidence to prove malice for purposes of his separate conviction for maliciously shooting inside an occupied building. In the trial court, however, he contested the showing of malice only as to the malicious wounding charge. *See Bethea*, 297 Va. at 744; *cf. Martinez v. Commonwealth*, 42 Va. App. 9, 21 (2003) (holding that defense counsel's argument that an indictment was "defective" because it did not include the word "malice" failed to preserve for appeal a claim that the evidence was insufficient to prove malice). So Harris's current argument concerning proof of malice with regard to the offense of maliciously shooting in an occupied building is barred by Rule 5A:18. Further, he has not asked this Court to invoke the good-cause or ends-of-justice exception to that rule, and we do not raise the exceptions sua sponte. *See* Rule 5A:18; *Jones v. Commonwealth*, 71 Va. App. 597, 607 n.9 (2020).

*Shaw v. Commonwealth*, ___ Va. ___, ___ (Apr. 17, 2025) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019)). It exists when a defendant "commits 'any purposeful and cruel act without any or without great provocation.'" *Alston*, 77 Va. App. at 648 (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020)).

It is well established that malice "may be implied from the deliberate use of a deadly weapon." *Watson-Scott*, 298 Va. at 256 (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)). And there is no question that "a loaded [firearm]" is "a 'deadly weapon.'" *Floyd v. Commonwealth*, 191 Va. 674, 683 (1950) (quoting *Pannill v. Commonwealth*, 185 Va. 244, 253 (1946)); *see Washington v. Commonwealth*, 75 Va. App. 606, 621 (2022).

Harris argues that he could have "acted in the heat of passion upon sudden provocation," negating a finding of malice, and that the trial court "should have reduced the charge of malicious wounding to unlawful wounding." "As a general rule, whether provocation, shown by credible evidence," establishes that a defendant acted in the heat of passion or with malice "is a question of fact." *Woods v. Commonwealth*, 66 Va. App. 123, 131-32 (2016) (quoting *McClung v. Commonwealth*, 215 Va. 654, 656 (1975)). Accordingly, we will not disturb the trier of fact's finding "unless it is plainly wrong or without evidence to support it." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (quoting *Sheppard v. Commonwealth*, 250 Va. 379, 387 (1995)).

"'Heat of passion' refers to 'the *furor brevis* which renders a man deaf to the voice of reason.'" *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). "Malice and heat of passion are mutually exclusive[. M]alice excludes passion, and passion presupposes the absence of malice." *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986). "Heat of passion excludes malice when

provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Williams*, 64 Va. App. at 249-50 (quoting *Graham*, 31 Va. App. at 671).

The record demonstrates that Harris acted with malice when he purposefully and cruelly wounded Lanier using a firearm with little provocation. Following a thirty-second fistfight, Harris left the White Oak for the stated purpose of retrieving a firearm. A few minutes later, after having time to reflect, he returned with a loaded pistol, definitionally a deadly weapon. *See Floyd*, 191 Va. at 683. He immediately held it to Lanier's head. As Lanier pushed the pistol away, Harris said, "I'll kill you," and raised the firearm to his head a second time. *See Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (explaining that "[m]alic[e] . . . may be directly evidenced by words, or inferred from acts and conduct [that] necessarily result in injury" (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013))). Harris's gun fired, striking Lanier in the shoulder and leaving him physically impaired. And the evidence established that Lanier never touched the gun.

The evidence amply supports the jury's conclusion that Harris maliciously wounded Lanier.

### B. Possession of a Firearm by a Convicted Felon

It is unlawful for any person previously convicted of a felony to "knowingly and intentionally" possess a firearm. Code § 18.2-308.2(A). "[T]o obtain a conviction for . . . possessory offenses, the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the [item] with knowledge of its nature and character." *Garrick*, 303 Va. at 183. To sustain a conviction under Code § 18.2-308.2(A), "the evidence need show only that a person subject to the provisions of that statute possessed an instrument [that] was designed, made, and intended to expel a projectile by means of an explosion." *Armstrong v.*

*Commonwealth*, 263 Va. 573, 584 (2002). What constitutes a firearm can be proved using the victim's description of the item and the circumstances under which the defendant communicates its status as a weapon. *See Jordan v. Commonwealth*, 286 Va. 153, 157-58 (2013) ("confirm[ing]" that presenting a weapon and "threat[ening] to kill the [store] clerk" amounted to "an implied assertion that the object was a firearm" and supported a conviction for violating Code § 18.2-308.2 (citing *Redd v. Commonwealth*, 29 Va. App. 256, 258-59 (1999))).

Harris challenges only the element of the offense requiring proof that the instrument possessed qualified as a firearm under Code § 18.2-308.2(A). He argues that because no firearm was recovered, the evidence failed to prove that it was "a firearm designed to expel a projectile by means of an explosion." We disagree.

Harris, in response to a friend's urging, said he was getting a gun. Witnesses saw Harris return to the White Oak with a firearm and hold it to Lanier's head. Lanier testified that Harris held the pistol to his head and threatened to kill him. And critically, the gun *discharged*, expelling a projectile by means of an explosion. The projectile hit Lanier in the shoulder, and bullet fragments remained there.[8]

Considering the direct and circumstantial evidence, the jury reasonably concluded that Harris possessed a firearm in violation of the statute.

C. Identification of Harris as the Shooter

It is axiomatic that "the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt" at trial. *Shahan v. Commonwealth*, 76

---

[8] Evidence, accepted as true, that an object believed to be a gun was fired, caused a victim to bleed profusely, and lodged a bullet in the victim's shoulder proves that the item expelled a projectile by means of an explosion, thereby meeting the definition of a firearm under Code § 18.2-308.2. *See Speller v. Commonwealth*, 69 Va. App. 378, 396 (2018) ("Common sense dictates that a reasonable fact finder could conclude that the 'shotguns, rifles, and pistols' locked in a gun safe along with ammunition were items designed, made, and intended to fire a projectile.").

- 11 -

Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 250 (1992)); *see also Sample v. Commonwealth*, 303 Va. 2, 10, 16 (2024) (observing that identification testimony, once admitted, is evaluated under the same standard as for assessing the sufficiency of the evidence as a whole rather than considering the factors of *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

Here, the identification of Harris as the criminal actor was based on the testimony of three eyewitnesses. When a witness identifies the offender "in court, . . . [t]he jury can observe the witness during the identification process and . . . evaluate the reliability of the . . . identification." *Walker*, 302 Va. at 316 (quoting *United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986)). Lanier, the victim, unequivocally identified Harris as the man who held the gun to his head and then shot him. Although Lanier had never met Harris before, White, the kitchen manager at the bar, also identified Harris as the shooter, saying Harris was "a regular" there before the incident. Pritchett, the owner of the bar, similarly identified Harris as the shooter. Only fifteen to twenty people were in the bar at the time, reducing the likelihood of any confusion over who fired the shots. The testimony of these three eyewitnesses, accepted by the jury as credible, was sufficient to prove Harris's identity as the shooter. *See Sample*, 303 Va. at 16-17 (deferring to the trier of fact's finding that the victim's in-court identification of his assailant was credible); *Moseley*, 293 Va. at 465 (holding that the evidence was sufficient to support the fact finder's rejection of the hypothesis of innocence "that someone else was the criminal agent"); *see also Brown*, 37 Va. App. at 523 ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder . . . ." (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995))).

The issues Harris raises on appeal—including that six years had passed between the shooting and the identifications at trial, and that the victim had neither met Harris before the shooting nor seen him since—were appropriately submitted to and weighed by the jury as the trier of fact. *See Thomas v. Commonwealth*, 44 Va. App. 741, 754 ("We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." (quoting *Curtis v. Commonwealth*, 11 Va. App. 28, 33 (1990))), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005) (per curiam). Lanier confirmed that he was "certain that [Harris] [wa]s the person who shot" him. White testified that he "remember[ed] Harris']s face . . . because he was a regular . . . [who] was in the[ bar] quite often" before the shooting. And Pritchett confirmed that despite the passage of time, he remained "confident" that Harris was the person he saw fire the gun. Although no physical evidence, such as DNA, ballistics, or fingerprints, tied Harris to the crime, such evidence is simply not required. *See Brown*, 37 Va. App. at 523 (citing *Satcher*, 244 Va. at 250).

The evidence, viewed under the proper standard, supports the jury's determination that Harris was the perpetrator.

CONCLUSION

The trial court did not abuse its discretion by allowing the victim to remain in the courtroom throughout Harris's trial. And it did not err by holding that the evidence was sufficient to support his convictions. Consequently, Harris's convictions are affirmed.

*Affirmed.*